# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 14, 2001 Session

## MARY JOHNSON, ET AL. v. LeBONHEUR CHILDREN'S MEDICAL CENTER, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Shelby County**
**Nos. 66041-9 and 74022-9      Robert L. Childers, Judge**

---

### No. W1999-01719-SC-R11-CV - Filed May 3, 2002

---

We granted appeal to determine whether the vicarious liability of a private hospital may be based upon the acts or omissions of a state-employed physician resident. We hold that a private hospital may be vicariously liable under the doctrine of respondeat superior based solely upon the acts of a state-employed physician resident when the resident is acting as an agent of the hospital. The judgment of the Court of Appeals is affirmed, and the case is remanded to the trial court for proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed; Case Remanded to Trial Court**

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR. and WILLIAM M. BARKER, JJ, joined.

Parke S. Morris, Robertson Morrow Leatherman, and Thomas R. Prewitt, Jr., Memphis, Tennessee, for the appellant, LeBonheur Children's Medical Center.

Randall Loftin Kinnard, Nashville, Tennessee, and Steven Rand Walker, Memphis, Tennessee, for the appellee, Mary Johnson.

Buckner Wellford and John H. Dotson, Memphis, Tennessee, for the amicus curiae, UT Medical Group, Inc.

Catherine S. Mizell, Knoxville, Tennessee, and Rebecca P. Tuttle, Memphis, Tennessee, for the amicus curiae, University of Tennessee.

**OPINION**

**BACKGROUND / PROCEDURAL HISTORY**

Amman Johnson underwent surgery at LeBonheur Children's Medical Center (LeBonheur) on November 4, 1991, to repair a heart condition. During the surgery, Amman sustained permanent neurological damage resulting from cardiac arrest. Mary Johnson, Amman's mother, filed suit against LeBonheur and other health care providers involved in the surgery seeking damages for the injuries sustained by Amman.

The complaint alleges, *inter alia*, that Dr. Michael Citak and Dr. Michael Martindale were acting as the agents and servants of LeBonheur during Amman's surgery and that LeBonheur is vicariously liable under the doctrine of respondeat superior for their negligence. Dr. Citak and Dr. Martindale were physician residents in the University of Tennessee (UT) training program. They were compensated by UT and thus were state employees pursuant to Tenn. Code Ann. § 8-42-101(3). While in the UT training program, both resident physicians worked on rotation at LeBonheur.[1] During their rotation, they were required to follow LeBonheur's protocols, rules, and regulations in providing treatment or services, or otherwise in attending patients of LeBonheur. Amman Johnson was one of the LeBonheur patients for whom the resident physicians provided services. Dr. Citak assisted in performing Amman's surgery, and Dr. Martindale assisted in providing the anesthesia care during the surgery.

LeBonheur filed a motion for partial summary judgment. LeBonheur asserted that it could not be held vicariously liable based solely upon the actions of Dr. Citak and Dr. Martindale because the physician residents were immune from liability as state employees under Tenn. Code Ann. § 9-8-307. On December 8, 1998, the trial court entered an order overruling the motion. LeBonheur was granted permission to seek an interlocutory appeal pursuant to Tenn. R. App. P. Rule 9. The Court of Appeals affirmed the trial court's overruling of the partial summary judgment motion. We granted appeal.

I. Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. A ruling on a motion for summary judgment involves only questions of law and not disputed issues of fact. Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc., 59 S.W.3d 63 (Tenn. 2001). Accordingly, our review of a denial of summary judgment is de novo with no presumption of correctness as to the trial court's findings. Webber v. State Farm Mut. Auto. Ins. Co., 49 S.W.3d 265, 269 (Tenn. 2001). The evidence must be viewed "in the light most favorable to the nonmoving party," and all reasonable inferences must be drawn in the nonmoving party's favor. Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 89 (Tenn. 2000).

---

[1] LeBonheur and UT entered into a written affiliation agreement on January 22, 1975.

# ANALYSIS

## II. Tennessee Code Annotated § 9-8-307

To determine whether LeBonheur may be held vicariously liable under the doctrine of respondeat superior for the actions of physician residents employed by the State, we begin with an examination of the relevant portions of Tenn. Code Ann. § 9-8-307 (1998). The statute provides in pertinent part:

> (a)(1) The commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of "state employees," as defined in § 8-42-101(3), falling within one (1) or more of the following categories:
>
>     *     *     *
>
> (D) Legal or medical malpractice by a state employee; provided, that the state employee has a professional/client relationship with the claimant;
>
>     *     *     *
>
> (b) Claims against the state filed pursuant to subsection (a) shall operate as a waiver of any cause of action, based on the same act or omission, which the claimant has against any state officer or employee. The waiver is void if the commission determines that the act or omission was not within the scope of the officer's or employee's office or employment.
>
>     *     *     *
>
> (h) State officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain. For purposes of this chapter, "state officer" or "employee" has the meaning set forth in 8-42-101(3).

Tenn. Code Ann. § 9-8-307 (1998) (emphasis added).

When construing statutes, we are required to ascertain and effectuate the legislative intent and purpose of the statutes. State v. Walls, 62 S.W.3d 119 (Tenn. 2001). We should "assume that

-3-

the legislature used each word in the statute purposely and that the use of [each] word[] conveyed some intent." State v. Levandowski, 955 S.W.2d 603, 604 (Tenn. 1997). Applying these principles, we hold that the legislative purpose and intent of Tenn. Code Ann. § 9-8-307 is to protect state employees from individual liability for acts or omissions that occur in the scope of their employment.

Section 9-8-307 of the Tennessee Code Annotated vests the Tennessee Claims Commission with exclusive jurisdiction for medical malpractice claims against the State of Tennessee based upon the actions of physician residents employed by the State. The filing of a claim against the State in the Claims Commission waives any cause of action against such a physician resident based on the same act or omission occurring within the scope of employment. Tenn. Code Ann. § 9-8-307(b) (1998). The statute further provides that state employees are absolutely immune from liability unless their acts or omissions are willful, malicious, criminal, or done for personal gain. Tenn. Code Ann. § 9-8-307(h) (1998). Nothing in the statute, however, immunizes a private hospital from liability for the acts or omissions of physician residents employed by the State who are also acting as agents or servants of the private hospital. Section 9-8-307 of the Tennessee Code Annotated therefore provides LeBonheur no protection against the imposition of vicarious liability based upon the acts or omissions of Dr. Citak and/or Dr. Martindale if the residents are found to have been the agents of the hospital.

### III. Traditional Agency Principles

We must now determine whether LeBonheur may be held vicariously liable under traditional agency principles for the acts of state-employed physician residents who are "immune" from individual liability. We begin with a review of relevant agency principles.

The creation of an agency relationship does not require a contract, an explicit agreement, or an understanding between the parties. White v. Revco Disc. Drug Ctrs., Inc., 33 S.W.3d 713, 724 (Tenn. 2000). The existence of an agency relationship, however, "is a question of fact under the circumstances of the particular case," id. (quoting McCay v. Mitchell, 62 Tenn. App. 424, 463 S.W.2d 710, 715 (1970)), and is determined by examination of agreements among the parties or of the parties' actions. Id. The principal's right to control the acts of the agent is a relevant factor when determining the existence of an agency relationship. Id. The amount of actual control exercised by the principal over the agent also may be determinative of whether an agency relationship exists. McDonald v. Dunn Const. Co., 182 Tenn. 213, 220, 185 S.W.2d 517 (1945).

When an agency relationship exists, the principal may be bound by the acts of the agent performed on the principal's behalf and within the actual or apparent scope of the agency. White, 33 S.W.3d at 724. In Tennessee, the doctrine of respondeat superior permits the master/principal to be held liable for the negligent actions of his servant/agent. Smith v. Henson, 214 Tenn. 541, 551, 381 S.W.2d 892, 897 (1964). To hold the master/principal vicariously liable, "it is enough that the servant or agent was acting in the business of his superior." White, 33 S.W.3d at 725 (quoting Kinnard v. Rock City Const. Co., 39 Tenn. App. 547, 551, 286 S.W.2d 352, 354 (1955)).

Moreover, an agent may serve two masters simultaneously when the objectives of the dual masters are not contrary. Id. "A person may be the servant of two masters, not joint employers, at one time as to one act, if the service does not involve abandonment of the service to the other." Id. (quoting Restatement (Second) of Agency, § 226 cmt. b.). Two parties "may agree to employ a servant together or to share the services of a servant. If there is one agreement with both of [the parties], the actor is the servant of both [when] the servant is subject to joint control." Restatement of the Law, Second, Agency, § 226. Thus, a person serving two masters may subject both to liability for the same act "if the act is within the scope of employment for both." White, 33 S.W.3d at 725 (quoting Restatement (Second) of Agency, § 226 cmt. a.). We hold, therefore, that a physician resident may be the agent of both the State and a private hospital. Whether an agency relationship exists is determined by the trier of fact. See Harris v. St. Mary's Med. Ctr., Inc., 726 S.W.2d 902, 906 (Tenn. 1987).

LeBonheur argues that if physician residents may also be agents of a private hospital, then the absolute immunity granted physician residents would be removed, contrary to legislative intent. LeBonheur contends that the immunity provided by statute to resident physicians could not apply to residents who have dual masters. LeBonheur's argument incorrectly presumes that an agent can act for only one master at a time. When a state-employed physician resident performs a rotation at a private hospital, the same acts or omissions may be within the resident's scope of employment with the State and within the resident's scope of employment with the private hospital. Permitting a finding of dual masters, therefore, does not serve to abolish the absolute immunity granted to a state-employed physician resident pursuant to section 9-8-307(h).

LeBonheur also asserts that a principal/master may not be held vicariously liable under the doctrine of respondeat superior based solely upon the acts of an agent who is immune from liability. In support of this proposition, LeBonheur cites numerous cases. Our analysis of Tennessee case law, however, reveals that this proposition is not without limitation.

Loveman Co. v. Bayless, 128 Tenn. 307, 160 S.W. 841 (Tenn. 1913), represents the first category of cases addressing this issue. In Loveman Co., the employer's liability was predicated solely upon the doctrine of respondeat superior. 128 Tenn. 307, 311, 160 S.W. 841 (Tenn. 1913). The jury rendered a verdict against the employer but in favor of the employees. Id. The Court held that when an action is filed against an employer based solely upon the tortious actions of its employee under the doctrine of respondeat superior, a verdict in favor of the employee entitles the employer to a discharge from liability. 128 Tenn. 307, 312, 160 S.W. 841, 842 (Tenn. 1913). The Court reasoned that it is contradictory to find the master liable when the servant by whose act the injury occurred is exonerated on the same evidence. Loveman Co., 128 Tenn. 307, 315, 160 S.W. 841, 843 (Tenn. 1913).

Subsequently, the Court, in Raines v. Mercer, addressed the issue of whether a father could be held liable to his son's wife under the doctrine of respondeat superior for his son's negligent conduct. 165 Tenn. 415, 55 S.W.2d 263 (1932). The plaintiff, the wife of the defendant's son, filed suit against the defendant for his son's negligent operation of the defendant's vehicle. Raines, 165

Tenn. 415, 417, 55 S.W.2d 263 (1932). The negligent incident occurred before the marriage of the plaintiff and the defendant's son. Id. The Raines Court held that the rule of marital unity[2] extinguished the plaintiff's right of action against her husband. 165 Tenn. 415, 419, 55 S.W.2d 263, 264 (1932). The Court reasoned that since the plaintiff could not maintain a direct action against her husband, she "could not avoid the forbidden frontal attack by an encircling movement against [the principal, her husband's father] . . . ." Raines, 165 Tenn. 415, 420, 55 S.W.2d 263, 264 (1932); See also Graham v. Miller, 182 Tenn. 434, 187 S.W.2d 622 (1945) (holding that the general rule prohibiting a child from suing his parent prevents the imposition of liability to the parent's employer under the doctrine of respondeat superior); Ownby v. Kleyhammer, 194 Tenn. 109; 250 S.W.2d 37 (1952); Smith v. Henson, 214 Tenn. 541, 381 S.W.2d 892 (1964). Thus, by extinguishing the right of action against the son, the marital unity rule precluded an action against the father.

In Stewart v. Craig, 208 Tenn. 212, 344 S.W.2d 761 (1961), this Court established a third category of cases that prohibited a party from maintaining an action against the principal for vicarious liability under the doctrine of respondeat superior based solely upon the acts of an agent. In Stewart, the plaintiffs were injured in an automobile accident in which the driver was an employee of the defendant. 208 Tenn. 212, 213, 344 S.W.2d 761 (1961). The plaintiffs executed a covenant not to sue the employee/driver but then filed suit against the employer based on the doctrine of respondeat superior. Stewart, 208 Tenn. 212, 214, 344 S.W.2d 761, 762 (1961). The Stewart Court held that the covenant not to sue prohibited a suit for negligence against the employer based solely on vicarious liability. 208 Tenn. 212, 216, 344 S.W.2d 761, 763 (1961); See also Craven v. Lawson, 534 S.W.2d 653 (Tenn. 1976).

These cases indicate that a principal may not be held vicariously liable under the doctrine of respondeat superior based upon the acts of its agent in three instances: (1) when the agent has been exonerated by an adjudication of non-liability, (2) when the right of action against the agent is extinguished by operation of law, or (3) when the injured party extinguishes the agent's liability by conferring an affirmative, substantive right upon the agent that precludes assessment of liability against the agent. See Rankhorn v. Sealtest Foods, 63 Tenn. App. 714, 721, 479 S.W.2d 649, 652 (1971).

The first and third categories above clearly do not apply to the facts of this case. The resident physicians in this case have not been exonerated by an adjudication of non-liability; and Ms. Johnson has not taken any affirmative action to prevent an assessment of liability against the residents. The second category similarly provides no basis for LeBonheur's assertion that the resident physicians' personal immunity should insulate LeBonheur from vicarious liability. The marital unity rule extinguished a spouse's right of action that was based upon the other spouse's tortious conduct. The statute conferring immunity upon the residents, however, does not extinguish a claimant's right of action. Section 9-8-307(h) of the Tennessee Code Annotated simply immunizes

---

[2]Marital unity, a rule that declared husband and wife to be one person, extinguished antenuptial actions for tort between husband and wife. Raines, 165 Tenn. 415, 420, 55 S.W.2d 263, 264. Davis v. Davis, 657 S.W.2d 753 (Tenn. 1983), expressly abolished interspousal tort immunity.

physician residents from individual monetary liability. The residents' conduct remains available as a basis for the imposition of liability in the Claims Commission against the State. Thus, Ms. Johnson's right of action against the residents survives. Fault may be assessed for the residents' tortious conduct, but the State has assumed responsibility for the damages assessed as a result of that fault. Accordingly, we hold that a physician resident's personal immunity does not prohibit LeBonheur from being held vicariously liable under the doctrine of respondeat superior based upon the actions of a physician resident.

LeBonheur further maintains that it may not be held vicariously liable for the actions of the resident physicians because to do so would violate common law indemnity principles. Courts in Tennessee have long recognized that a principal is entitled to seek indemnification against a negligent agent. See Continental Ins. Co. v. City of Knoxville, 488 S.W.2d 50 (Tenn. 1972); Cohen v. Noel, 56 S.W.2d 744 (Tenn. 1933); Walker v. Walker, 52 Tenn. 425 (1871). LeBonheur asserts, however, that it would be barred from seeking indemnification against the residents. The residents are provided absolute immunity from individual liability. See Tenn. Code Ann. § 9-8-307(h). Moreover, the State has not consented to suit for indemnity claims based upon the actions of its employees. See Northland Ins. Co. v. State of Tennessee, 33 S.W.3d 727 (Tenn. 2000) (holding that "a waiver of sovereign immunity must be clear and unmistakable"). We decline, however, to hold that the unavailability of an action for indemnity precludes the imposition of vicarious liability against a private hospital for the negligence of physician residents who are found to be agents of the hospital. Section 9-8-307(h) of the Tennessee Code Annotated eliminates the common law right to indemnification by providing absolute immunity to resident physicians who are working within the scope of their employment. It is within the prerogative of the legislature, therefore, to either modify this individual immunity or to waive the State's sovereign immunity to permit private, dual masters of state employees to seek indemnification against the State in the Claims Commission.

Finally, LeBonheur argues that our holding in Carroll v. Whitney, 29 S.W.3d 14 (Tenn. 2000), requires that LeBonheur receive the same immunity that the residents receive. In Carroll, we held that fault could be apportioned to a nonparty, notwithstanding that the nonparty was immune from suit. Id. at 15. This Court reasoned that if a nonparty may not be apportioned fault, then the doctrine of joint and several liability would be revived. Id. at 22. The Court determined, therefore, that fairness to the parties required linking liability with fault. Id. at 21. The decision in Carroll, however, in no way eliminated the doctrine of respondeat superior under which a principal may be liable solely for the tortious acts of his agent. Eliminating vicarious liability for private hospitals that utilize state-employed residents would encourage private hospitals to shift the risk of liability to the State simply because the residents are employed by the State. As we stated in White v. Revco Disc. Drug Ctrs., Inc., 33 S.W.3d 713, 722 (Tenn. 2000), the allocation of risk is

> placed on the employer because, having engaged in an enterprise, which will on the basis of all past experience involve harm to others through the torts of employees, and sought to profit by it, it is just that [the employer], rather than the innocent injured plaintiff, should bear [the risk]; and [liability is placed on the employer] because [the

-7-

employer] is better able to absorb [the risks], and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large.

Thus, fairness to the parties requires that a private hospital may be held vicariously liable under the doctrine of respondeat superior solely for the acts of a state-employed physician resident when that resident is found to be the agent or servant of the hospital.

## IV. Denial of Summary Judgment

Having determined that LeBonheur may be held vicariously liable under the doctrine of respondeat superior for the actions or omissions of state-employed physician residents who are acting as agents or servants of LeBonheur, we must now consider whether LeBonheur is entitled to summary judgment. We are required to "take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn. 1993). The record indicates that Dr. Citak and Dr. Martindale were physician residents in the University of Tennessee training program and were working on rotation at LeBonheur at the time of Amman's surgery. While on rotation at LeBonheur, they provided treatment, services, or otherwise attended patients of LeBonheur. Dr. Citak assisted in performing Amman's surgery, and Dr. Martindale assisted in providing the anesthesia care during the surgery. Moreover, Dr. Citak and Dr. Martindale were required to follow the protocols, rules and regulations of LeBonheur. Viewing the evidence in a light most favorable to Ms. Johnson, we hold that a genuine issue of material fact exists as to whether Dr. Citak and/or Dr. Martindale were acting as LeBonheur's agents or servants.

## **CONCLUSION**

We hold that a physician resident may be the agent of both the State and a private hospital. Further, the absolute immunity granted pursuant to Tenn. Code Ann. § 9-8-307(h) to a state-employed physician resident is not removed by the creation of a dual master relationship. A material issue of fact exists as to whether Dr. Citak and/or Dr. Martindale were acting as the agents of LeBonheur at the time of Amman Johnson's surgery. Accordingly, we affirm the Court of Appeals' judgment affirming the trial court's overruling of LeBonheur's motion for partial summary judgment. The case is remanded to the trial court for proceedings consistent with this opinion. Costs of this appeal are taxed to the Appellant, LeBonheur Children's Medical Center, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE